ROCKY HILL CONVALESCENT HOSPITAL, INC. *v.*
THE METROPOLITAN DISTRICT

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued January 5—decided March 2, 1971

*Bourke G. Spellacy,* with whom were *Hubert J. Santos,* and, on the brief, *Stuart N. Updike,* for the appellant (defendant.)

*Robert P. Kuzmak,* for the appellee (plaintiff).

RYAN, J. On May 11, 1966, the plaintiff applied to The Metropolitan District, hereinafter referred to as the defendant, for permission to construct an eight-inch sanitary sewer line as a public sewer under a developer's permit-agreement to tie into the defendant's existing sanitary sewer on Main Street in the town of Rocky Hill, in lieu of a private house

connection and payment of a connection charge. The defendant denied the application and levied a connection charge. The plaintiff appealed to the Court of Common Pleas, alleging two basic grounds: first, that the defendant's charge was made in violation of the provisions of § 7-255 of the General Statutes and second, that the defendant was without authority under its charter and ordinances to make such a charge. The Court of Common Pleas sustained the appeal and the defendant has appealed to this court.

The trial court found the following facts. On May 3, 1962, the defendant assessed benefits because of the construction of a sewer in Main Street, Rocky Hill, against property owned by Julia F. Hammond on the west side of Main Street. The assessment against her property was for a width of 333.17 feet and a depth of 200 feet. The property assessed included the land on which the Hammond residence stood. In back of this property so assessed lay other property, undeveloped at the time, which was also owned by Mrs. Hammond and is presently owned by the plaintiff, the Rocky Hill Convalescent Hospital, Inc. The defendant normally assesses residential property to a depth of 200 feet. The original layout of the sewer and the proposed assessment were published and sent to all property owners whom the defendant believed would be benefited and, on June 11, 1962, a public hearing was held on assessments made generally in Rocky Hill, at which hearing a representative of Mrs. Hammond objected to the assessment against her property. The defendant then voted to delete the southerly 200 feet of this assessment against the Hammond property and published a new assessment thereon. On July 25, 1962, a caveat was filed setting forth the new assess-

ment against the Hammond property. No appeal from this assessment was ever taken.

On October 21, 1963, Mrs. Hammond transferred her title to Ann H. Ransom and Cathryn J. Stevenson. On May 14, 1964, Cathryn J. Stevenson transferred the title to her portion of this property to Ann H. Ransom. On September 17, 1965, Ann H. Ransom transferred title to the plaintiff of that part of the property which was formerly owned by Mrs. Hammond and which had not been assessed by the defendant. On August 2 and 3, 1965, the final assessment was published setting forth the actual cost of the sewer. In 1965 the defendant sent a bill for the assessment to Ann H. Ransom and she elected a time payment plan to pay it. A lien was filed on the assessed property on October 27, 1965, to secure payment of the assessment. The lien contained a description of the property assessed, which was 133.17 feet on Main Street, to a depth of 200 feet. The property in the rear, which is now owned by the plaintiff, was never assessed nor was any caveat or lien ever filed against it. On May 11, 1966, the plaintiff applied for permission to construct an eight-inch sanitary sewer line from this property across the property of Ann H. Ransom to the sewer of the defendant in Main Street. The plaintiff's property is within the same sewer district as the property formerly owned by Mrs. Hammond on Main Street which had been assessed by the defendant. Construction of the sewer in Main Street was completed before May 11, 1966. The total cost of the sewer in Main Street (except for certain excess costs) had been assessed before May 11, 1966.

An assessment is based on three factors, namely, engineering costs, construction costs and benefit to the property. A connection charge is based on "com-

parables for preceding years." The defendant permitted the plaintiff to connect into the Main Street sewer but required it to pay a connection charge of $6600. This charge was based on a rate of $1500 per acre for the 4.4 acres owned by the plaintiff and was computed on the basis of a schedule which previously had been established by the defendant. No public hearing was held on the connection charge levied against the plaintiff. The plaintiff paid this charge and it was placed in a perpetual revolving accessible sewer fund which is used to defray costs for sewer mains in any area of the defendant's territory. The court concluded that the defendant could establish a charge for connection with its sewer only under the provisions of § 7-255 of the General Statutes and that the connection charge paid by the plaintiff was improperly levied.

The defendant makes no attack on the finding of subordinate facts, but assigns error in the conclusions of the trial court. The basic question to be determined is whether the provisions of § 7-255 of the General Statutes, or the provisions of the defendant's charter and ordinances, applied to the factual situation of this case. An examination of the legislative histories of these enactments is required.

The defendant is a municipal corporation created in 1929 by a special act of the General Assembly. 20 Spec. Acts 1204, No. 511. It was given broad powers relating to sewage disposal, water supply and regional planning as well as powers limited to certain highways. Among the powers and duties conferred on the corporation were the following general powers relating to sewers: "The layout, building, creation, maintenance, improvement, alteration, repair and discontinuance of sewers and

sanitary systems and plants for the disposal of sewage, . . . the construction of drains for water or sewage and the control and maintenance of all the foregoing in the public highways and elsewhere throughout the district, together with such control of the streams and water courses of said district as is necessary or convenient for the foregoing as hereinafter more particularly stated". Compiled Charter, Metropolitan District (1960 Ed.) § 1-2b.[1] Chapter 8 of the charter covers in detail the powers conferred upon the defendant concerning sewers and other public works. Chapter 9 concerns powers and proceedings for the layout, construction and assessment of sewers. The General Assembly adopted number 282 of the Special Acts of 1949 authorizing the defendant to enact ordinances regulating the use of sewers: "The Metropolitan District may make rules, by-laws and ordinances with respect to connections with, the use of and the discharge of substances into drains, sewers and their appurtenances which belong to or are under the jurisdiction or control of said district." 25 Spec. Acts 1021, No. 282. This became § 8-4 of the charter. In pursuance of the authority conferred by this section the defendant adopted the following amendments to its general sewer ordinance effective July 21, 1960, and designated as §§ S7o and S7p of the Ordinances of the Metropolitan District relating to sewers: "Whenever a sewer has been laid out and constructed by the District to serve a particular section of highway or a particular area, no connection will be permitted thereto for any property which has not been assessed therefor or has not shared in an equitable manner

---

[1] Sections of the original special act and amendments thereto are designated by the section numbers of the Compiled Charter of the Metropolitan District, Edition of 1960.

in the expense thereof, unless prior to such connection, the owner of such property first enters into a special agreement, to be recorded in the land records and providing for advance payment by the owner of a sanitary connection charge, and providing that the permission granted will not affect the power of the District under the provisions of its Charter and Ordinances to make future sewer layouts, and benefit assessments therefor, against the property of the said owner, in the same manner as if the permission to connect has never been granted by the District, and agreeing to credit the said connection charge payment toward any such future assessment, without allowance for interest between the date of payment of the said charge and the date of any future final assessment billed said owner." § S7o.

On August 23, 1966 the plaintiff entered into a written agreement in accordance with the provisions of the ordinance.

Section S7p of the Ordinances of the Metropolitan District relating to sewers provides as follows: "The amount of the sanitary sewer connection charge for connections under Sections S7m—o incl. hereof shall be determined by multiplying the actual or adjusted linear feet of frontage of said property or its area by the sanitary sewer connection charge rates in effect at the date of issuance of the house connection permit. The sanitary sewer connection charge schedule of rates for frontage and area shall be determined and adopted from time to time by vote of the Bureau of Public Works, based on current average sewer assessment rates for sewers constructed under normal conditions."

The defendant claims that by virtue of the special act and the ordinances quoted, it was empowered to make the connection charge of $6600, computed on

the basis of a schedule which had previously been established by it, and that no public hearing was required concerning this charge.

The plaintiff claims that § 8-4 of the charter does not authorize the adoption of §§ S7o and S7p of the ordinances relating to sewers and that the defendant is subject to the provisions of § 7-255 of the General Statutes.[2] This section provides, in part, that "[n]o charge for connection with or for the use of a sewerage system shall be established or revised until after a public hearing before the sewer authority at which the owner of property against which the charges are to be levied shall have an opportunity to be heard concerning the proposed charges." The defendant concedes that in this case there was no public hearing.

Section 7-255 is part of chapter 103 of the General Statutes concerning sewerage systems. The prede-

---

[2] "Sec. 7-255. CHARGES. HEARING. APPEAL. The sewer authority may establish and revise fair and reasonable charges for connection with and for the use of a sewerage system. The owner of property against which any such connection or use charge is levied shall be liable for the payment thereof. Municipally-owned and other tax-exempt property which uses the sewerage system shall be subject to such charges under the same conditions as are the owners of other property, but nothing herein shall be deemed to authorize the levying of any property tax by any municipality against any property exempt by the general statutes from property taxation. No charge for connection with or for the use of a sewerage system shall be established or revised until after a public hearing before the sewer authority at which the owner of property against which the charges are to be levied shall have an opportunity to be heard concerning the proposed charges. Notice of the time, place and purpose of such hearing shall be published at least ten days before the date thereof in a newspaper having a circulation in the municipality. A copy of the proposed charges shall be on file in the office of the clerk of the municipality and available for inspection by the public for at least ten days before the date of such hearing. When the sewer authority has established or revised such charges, it shall file a copy thereof in the office of the clerk of the municipality and, not later than five days after such

cessor of this chapter was adopted in 1931 and designated as chapter 33a (§§ 55a—65a) of the 1931 Supplement. In the 1949 session of the General Assembly the predecessor of § 7-255 was adopted. The special act which became § 8-4 of the defendant's charter was adopted at the same session. The plaintiff claims that if the legislature had intended to grant authority to the defendant other than that granted by the General Statutes, it would have specifically so provided; that the ordinance, § S7o, is in flagrant conflict with the procedure established under § 7-255, and with due process generally, since it does not provide for notice of a hearing; and that the provisions of the General Statutes prevail. In determining whether the provisions of a general statute or those of a special law prevail, the general rule is that a special and local statute, providing

---

filing, shall cause the same to be published in a newspaper having a circulation in the municipality. Such publication shall state the date on which such charges were filed and the time and manner of paying such charges and shall state that any appeals from such charges must be taken within twenty-one days after such filing. In establishing or revising such charges the sewer authority may classify the property connected or to be connected with the sewer system and may give consideration to any factors relating to the kind, quality or extent of use of any such property or classification of property including (a) the volume of water discharged to the sewerage system, (b) the type or size of building connected with the sewerage system, (c) the number of plumbing fixtures connected with the sewerage system, (d) the number of persons customarily using the property served by the sewerage system, (e) in the case of commercial or industrial property, the average number of employees and guests using the property and (f) the quality and character of the material discharged into the sewerage system. The sewer authority may establish minimum charges for connection with and for the use of a sewerage system. Any person aggrieved by any charge for connection with or for the use of a sewerage system may appeal to the court of common pleas for the county or judicial district wherein the municipality is located and shall bring any such appeal to the next return day of said court, or the next but one. The judgment of the court shall be final."

for a particular case or class of cases, is not affected by a statute general in its terms, broad enough to include cases embraced in a special law, unless the intent to repeal or alter is manifest. *East Haven* v. *New Haven,* 159 Conn. 453, 468, 271 A.2d 110; *Wallen* v. *Hatch,* 82 Conn. 122, 124, 72 A. 575. Section 7-271 of the General Statutes provides: "Any power granted by this chapter [103] shall be in addition to, and not in derogation of, any power granted to any municipality under the provisions of any special act or of any general statute." Section 58a of the 1931 Supplement was the predecessor of § 7-271. The clear language of these statutes indicates that from 1931 to the present time it was never the intention of the legislature to repeal, limit, or modify any power granted to a municipality concerning sewerage systems under the provision of any special act.

The plaintiff also urges that § 8-4 of the defendant's charter by its language did not provide the authority to adopt an ordinance concerning connection charges, but only as to the use of and the discharge of substances into drains, sewers and their appurtenances. It clearly empowered the defendant to adopt ordinances "with respect to connections with" sewers. By its charter the legislature made the defendant a municipal corporation, with powers to sue and be sued, to hold and convey any estate real or personal, and generally to do all acts necessary and convenient for the building, creation, and maintenance of sewers, sanitary systems and plants for the disposal of sewage, and the control and maintenance of such systems in the public highways and elsewhere throughout the district. Incident to the performance of these duties was the right and power to do those things "necessary or convenient"

to accomplish these purposes. Compiled Charter, Metropolitan District (1960 Ed.) §§ 1-1, 1-2b; *Blakeslee* v. *Water Commissioners,* 121 Conn. 163, 173, 183 A. 887; *Stevens* v. *Water Commissioners,* 102 Conn. 218, 222, 224, 128 A. 713. To hold that the defendant could adopt ordinances "with respect to connections with" its sewers and that the provisions of these special acts did not authorize the defendant to adopt ordinances covering charges for this privilege would be clearly contrary to the intention of the legislature.

The defendant urges, and the court found, that the total cost of the sewer (except for certain excess costs) had been assessed before May 11, 1966. There is no indication in the finding as to the amount of those excess costs. In any event, the present case concerns a connection charge and not an assessment.

The plaintiff also claims that to levy a substantial charge without notice and a hearing is a taking of property without just compensation and without due process of law in violation of §§ 8 and 11 of article first of the Connecticut constitution and the fifth and fourteenth amendments to the constitution of the United States. We note also that the charter and ordinances of the defendant do not provide for an appeal from the levying of the connection charge. We pointed out in *Bahr Corporation* v. *O'Brion,* 146 Conn. 237, 246, 149 A.2d 691, that "[t]he right of appeal exists only under statute . . . and parties have no vested right thereto. . . . It is not essential to the constitutionality of the statute which authorizes an administrative board to make orders . . . that it contain a provision for an appeal, in a technical sense, from the board's action. If any person claims to be harmed by such an order, his constitutional right to due process is protected by his privilege to

apply to a court." *State* v. *Vachon,* 140 Conn. 478, 485, 101 A.2d 509; *Fishman* v. *Stamford,* 159 Conn. 116, 120, 121, 267 A.2d 443.

The conclusions of the trial court that the defendant could establish a charge for connection with its sewers only under the provisions of § 7-255 and that the connection charge paid by the plaintiff was improperly levied by the defendant, cannot be sustained.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.