The MUMFORD COVE
ASSOCIATION, INC., et al.

v.

The TOWN OF GROTON.

Civ. No. H–84–1256(JAC).

United States District Court,
D. Connecticut.

Feb. 26, 1986.

Mark R. Sussman, Hartford, Conn., for
plaintiffs Mumford Cove Ass'n, Inc., et al.

Richard Webb, Asst. Atty. Gen., Hartford, Conn., for plaintiff-intervenor Stanley J. Pac, Comm'r of Environmental Protection.

Thomas B. Wilson, New London, Conn., for defendant Town of Groton.

## RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

The issue presented by these motions for summary judgment is whether the Town of Groton has repeatedly violated the federal Clean Water Act, and thereby risked penalties of as much as $10,000 per day, as a result of its operation of its sewage treatment facilities.

This action for declaratory and injunctive relief as well as monetary penalties has been brought pursuant to the citizens' suit provisions of the Clean Water Act, 33 U.S.C. § 1365, by the Mumford Cove Association, Inc., the Haley Farm Estates, Inc., and individual plaintiffs who own land or dwellings in the Mumford Cove area of the Town of Groton. Stanley J. Pac, the Connecticut Commissioner of Environmental Protection, has intervened as an additional plaintiff in this action.

The defendant Town of Groton is a municipal corporation organized under the laws of the State of Connecticut. The defendant operates a sewage treatment plant that discharges effluents into Fort Hill Brook, a small freshwater stream that flows directly into Mumford Cove. The City of Groton and the City of New Lon-don, which are also municipalities organized under the laws of the State of Connecticut, have been permitted to participate in this action as *amici curiae*.[1]

The Connecticut Department of Environmental Protection ("DEP") has been authorized by the federal Environmental Protection Agency ("EPA") to issue National Pollutant Discharge Elimination System ("NPDES") permits. *See* 33 U.S.C. § 1342(a), (b). On December 30, 1973, the DEP issued NPDES Permit No. CT 0100242 to the defendant in this action. *See* Affidavit of Robert Norwood (filed May 29, 1985) ("Norwood Affidavit"), Exhibit E. The permit was renewed in substantially similar form on March 31, 1980. *See id.*, Exhibit F.

The defendant's NPDES permit imposes restrictions on discharges from the sewage treatment plant with respect to such factors as pH level, suspended and settleable solids, biological oxygen demand ("BOD"), fecal coliform bacteria and chlorine. The permit also sets sampling and reporting requirements for these discharges. Another condition of the permit is that the defendant comply with DEP Order No. 1754, subsequently modified as Order No. 964, which called for the completion of a new outfall to direct discharges from the sewage treatment plant to the Thames River by no later than October 31, 1979.[2]

A violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), occurs when (1) a person;[3] (2) discharges a pollu-

---

1. On April 29, 1985, the court denied a motion by the Cities of Groton and New London to intervene as defendants in this action; an appeal from this decision is pending before the United States Court of Appeals for the Second Circuit. The Cities of Groton and New London were permitted to participate in this action as *amici curiae, see* endorsement order granting Application for Leave to Appear as *Amicus Curiae* (entered May 21, 1985), and were served with copies of the pending motions for summary judgment and supporting documents as well as the calendar setting the date for oral argument on these motions. However, the *amici curiae* apparently declined to file any memoranda of

law with respect to the motions for summary judgment or to participate in the oral argument on these motions.

2. Order No. 964 was originally issued as Order No. 1754 and is referred to under the earlier number in Permit No. CT 0100242. *See* Plaintiff's Memorandum, Exhibits A (Order 964), B–D (modifications of Order 964), F (Permit No. CT 0100242); Affidavit of Fred S. Banach (filed May 29, 1985) at ¶ 6.

3. Municipalities such as the defendant are considered "persons" under the Clean Water Act. *See* 33 U.S.C. § 1362(5).

tant;[4] (3) into navigable waters;[5] (4) through a "point source";[6] (5) while not in compliance with provisions of the Act, including NPDES permit standards.[7] *See United States v. Valsicol Chemical Corporation*, 438 F.Supp. 945, 948 (W.D.Tenn. 1976). It is undisputed that all of these conditions have been met in the instant case.

The plaintiffs contend with respect to count one of the complaint that the defendant violated one or more of the terms of its NPDES permit on a total of 1,902 days between December 1, 1979 and December 31, 1985.[8] In addition, the plaintiffs contend with respect to count two of the complaint that the defendant has been in constant violation of its NPDES permit since December 1, 1979, as a result of its failure to construct and place into operation the outfall mandated by Order No. 964.

The defendant has acknowledged its violation of the effluent standards and reporting requirements of its NPDES permit in its monthly discharge monitoring reports ("DMRs") to the DEP; in its responses to the plaintiffs' requests for admission, *see* Admissions Nos. 15–51 (First Set), 8–9 (Second Set), 5, 7, 9–13 (Third Set); and in its counsel's remarks at oral argument on February 25, 1986. The defendant likewise has conceded, both in its admissions and at

oral argument, that it has failed to construct the sewer outfall mandated by Order No. 964. *See* Admissions Nos. 5, 6, 8–14 (First Set). However, the defendant contends that these violations ought not to give rise to liability under the Clean Water Act for a number of reasons that will be considered by the court *seriatim*.

### I.

■ The defendant argues with respect to count one of the complaint that any violations of its NPDES permit ought to be excused because the pollution of Mumford Cove may be attributable to factors other than the discharges from the sewage treatment plant, *see* Defendant Town of Groton's Memorandum of Law in Opposition to Motion for Summary Judgment (filed Dec. 27, 1985) ("Defendant's Memorandum") at 2, and because the violations "are of a technical nature and ... are commonly encountered ... in a pollution abatement facility of the magnitude of the Groton facility." *Id.* at 3. However, there appears to be nothing in the language or legislative history of the Clean Water Act, or in the subsequent decisions construing that statute, that would provide a basis for the exemptions sought by the defendant.

---

**4.** Sewage effluent is considered a "pollutant" under the Clean Water Act. *See* 33 U.S.C. § 1362(6).

**5.** It is not disputed that Fort Hill Brook and Mumford Cove are "navigable waters." *See* Answer (filed Feb. 5, 1985) at ¶ 29.

**6.** A "point source" is defined under the Clean Water Act, 33 U.S.C. § 1362(14), as

any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged.

It is not disputed that the defendant discharges effluent into Fort Hill Brook from a point source. *See* Answer at ¶ 30.

**7.** Courts have granted summary judgment to plaintiffs in numerous citizens' suits brought pursuant to 33 U.S.C. § 1365 on the issue of

liability. The decisions in these cases were based on findings of strict liability derived from discharge data reported in defendants' discharge monitoring reports ("DMRs") that exceeded levels allowed by NPDES permits. *See, e.g., Student Public Interest Research Group of New Jersey, Inc. v. Fritzsche, Dodge & Olcott, Inc.*, 579 F.Supp. 1528 (D.N.J.1984), *aff'd* 759 F.2d 1131 (3d Cir.1985); *Connecticut Fund for the Environment v. Job Plating Company*, 623 F.Supp. 207 (D.Conn.1985); *Chesapeake Bay Foundation v. Gwaltney of Smithfield*, 611 F.Supp. 1542 (E.D.Va.1985); *Chesapeake Bay Foundation v. Bethlehem Steel Corporation*, 608 F.Supp. 440 (D.Md.1985); *Sierra Club v. Raytheon Company*, 22 Env't Rep.Cas. (BNA) 1050 (D.Mass.1984).

**8.** It has been held that a violation of a monthly or weekly average permit limitation constitutes a violation on each day of the relevant month or week. *See Chesapeake Bay Foundation v. Gwaltney of Smithfield, supra*, 611 F.Supp. at 1552–1553; *United States v. Amoco Oil Company, supra*, 580 F.Supp. at 1045.

Our Court of Appeals has recognized that enforcement of the Clean Water Act does not depend upon "establish[ing a] correlation between effluent discharges by particular sources and the quality of the body of water into which the effluent flow[s]." *Hooker Chemicals & Plastics Corporation v. Train,* 537 F.2d 620, 623 (2d Cir.1976) (footnote omitted). Accordingly, this court must reject any argument that the defendant cannot be found liable under the Clean Water Act absent proof of a direct causal link between the violations of its NPDES permit and the pollution of Fort Hill Brook and Mumford Cove.

It has frequently been held that violations of an NPDES permit are not to be excused on the ground that they were "technical" or insignificant in nature. *See, e.g., Student Public Interest Research Group of New Jersey, Inc., v. Fritzsche, Dodge & Olcott, Inc.,* 579 F.Supp. 1528, 1538 (D.N.J.1984), *aff'd,* 759 F.2d 1131 (3d Cir.1985); *Sierra Club v. Simkins Industries,* 617 F.Supp. 1120, 1127–1128 (D.Md. 1985).

Furthermore, the Senate Report on the citizens' suit provision of the Clean Water Act, 33 U.S.C. § 1365, recognized that

> [a]n alleged violation of an effluent control limitation or standard would not require reanalysis of technological [or] other considerations at the enforcement stage. These matters will have been settled in the administrative procedure leading to the establishment of such effluent control provisions. Therefore, an objective evidentiary standard will have to be met by any citizen who brings an action under this section.

Federal Water Pollution Control Act Amendments of 1972, S.Rep. No. 414, 92d Cong., 1st Sess. *reprinted in* 1972 U.S. Code Cong. & Ad.News 3668, 3745. Any requirement that a court determine whether a particular permit violation is merely "technical" or whether a particular effluent limitation is necessary to control pollution would be inconsistent with the Congressional intent to preclude "reanalysis of

technological [or] other considerations at the enforcement stage."

## II.

██  The defendant also opposes the motions for summary judgment on the ground that it "has made every reasonable effort to comply with the NPDES permits and orders of the DEP." Defendant's Memorandum at 3. However, the courts have consistently held that parties are strictly liable for violations of the Clean Water Act. *See, e.g., United States v. Earth Sciences, Inc.,* 599 F.2d 368, 374 (10th Cir.1979) (noting that regulatory provisions of the Act "were written without regard to intentionality, ... making the person responsible for the discharge of any pollutant strictly liable"); *Steuart Transportation Company v. Allied Towing Corporation,* 596 F.2d 609, 613 (4th Cir.1979) (same).

Likewise, our Court of Appeals, in holding that parties are strictly liable for violations of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), observed that Congress had provided that " 'liability' under CERCLA 'shall be construed to be the standard of liability' under section 311 of the Clean Water Act, 33 U.S.C. § 1321, which courts have held to be strict liability." *State of New York v. Shore Realty Corporation,* 759 F.2d 1032, 1042 (2d Cir.1985) (Oakes, J.).

Accordingly, the defendant must be held strictly liable for violations of the conditions of its NPDES permit. The fault and intent of the defendant are relevant only with respect to the amount of any penalty that the court may impose at a later stage of these proceedings. *See, e.g., United States v. Amoco Oil Company,* 580 F.Supp. 1042, 1050 (W.D.Mo.1984) (fault and intent are to be considered under 33 U.S.C. § 1319(d) only in connection with the amount of penalty assessed); *Chesapeake Bay Foundation v. Gwaltney of Smithfield,* 611 F.Supp. 1542, 1561 (E.D.Va.1985) (observing that, while liability is strict under the Clean Water Act, "willfulness is

nevertheless relevant to the amount of penalty").

## III.

■ The defendant contends with respect to count two of the complaint that this action is precluded under 33 U.S.C. § 1365(b)(1)(B), which provides that a citizens' suit cannot be commenced

if the [EPA] Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with the standard, limitation, or order.

This argument must fail for the simple reason that neither the EPA Administrator nor the State of Connecticut "is diligently prosecuting" any civil or criminal action in any state or federal court challenging the defendant's compliance with its NPDES permit. Moreover, no such action was pending even at the time that this suit was commenced. It must be noted that the Court of Appeals has explicitly rejected the defendant's contention that administrative action undertaken in lieu of judicial proceedings may constitute "diligent prosecution" under 33 U.S.C. § 1365. *See Friends of the Earth v. Consolidated Rail Corporation,* 768 F.2d 57, 63 (2d Cir.1985) (Meskill, J.) (holding that a citizens' suit is precluded under the Clean Water Act "only if the Administrator of the EPA or a state has initiated and is diligently prosecuting an action in a state or federal court").

The defendant contends that the DEP's withdrawal of an earlier enforcement action seeking construction of the sewer outfall constituted a modification of Order No. 964. However, inasmuch as it is not disputed that the DEP did not formally modify Order No. 964 pursuant to C.G.S. § 22a–436 following the withdrawal of the suit, as it had modified such orders on previous occasions, *see* Norwood Affidavit, Exhibits A–D, the court holds that the de-

fendant's conclusory allegations do not establish the existence of an issue of material fact sufficient to defeat the motion for summary judgment. *See Quinn v. Syracuse Model Neighborhood Corporation,* 613 F.2d 438, 445 (2d Cir.1980). In any event, the legislative intent underlying the citizens' suit provisions of the Clean Water Act would be subverted if formally promulgated enforcement orders could be modified by informal and unrecorded understandings between polluters and regulators.

## IV.

■ Finally, the defendant argues, apparently for the first time in more than a decade of dispute over the proposed sewer outfall, that its failure to comply with Order No. 964 ought to be excused on the ground that C.G.S. § 7–246(a)[9] bars the construction of the outfall through the City of Groton without its consent. However, even assuming for the argument that the defendant has not waived its opportunity to raise this defense, C.G.S. § 7–246(a) clearly does not permit a municipality to escape its obligations to operate its sewage facilities in compliance with the Clean Water Act.

The legislature has provided that powers granted to water pollution control agencies under Chapter 103 of the Connecticut General Statutes, which includes C.G.S. § 7–246, "shall be in addition to, and not in derogation of, any power granted to any municipality under the provisions of any special act or of any general statute." C.G.S. 7–271. As the Supreme Court of Connecticut held in *Rocky Hill Convalescent Hospital, Inc. v. Metropolitan District,* 160 Conn. 446, 455, 280 A.2d 344 (1971), Chapter 103 was never intended "to repeal, limit or modify any power granted to a municipality concerning sewerage systems under the provision of any special act" or, presumably, of any general statute. The defendant retains broad powers

9. C.G.S. 7–246(a) provides, in pertinent part, that

[t]he water pollution control authority of any town within which there is a city or borough

shall not exercise any power within such city or borough except with the express consent of such city or borough.

to "lay out, construct, reconstruct, repair, maintain, operate, alter, extend and discontinue sewer and drainage systems and sewage disposal plants" under both C.G.S. § 7–148(c)(6)(B)(i) and the special act adopting the Town of Groton Charter, 1957 Conn.Spec. Act 251.

Moreover, this suit does not ask merely that the defendant be required to exercise its own authority under C.G.S. § 7–148 and its Town Charter to construct the proposed sewer outfall. Instead, the suit asks that the defendant be required to comply with a valid order of the Commissioner of Environmental Protection of the State of Connecticut. There is nothing in C.G.S. § 7–246 that even purports to limit the power of the State of Connecticut to order a town to construct an outfall through the territory of one of its subdivisions.

Consequently, the defendant, without regard to the provisions of C.G.S. § 7–246, may be ordered by the state Commissioner of Environmental Protection to construct a sewer outfall through the City of Groton and may be held liable under the Clean Water Act for its failure to do so.

### Conclusion

It is undisputed that the defendant failed to comply with the effluent limitations and reporting requirements of its NPDES permit on 1,902 days between December 1, 1979, and December 31, 1985. It is also undisputed that the defendant has been in constant violation of its NPDES permit and Order No. 964 since at least December 1, 1979, for having failed to construct the proposed sewer outfall. The defendant has offered the court no basis to excuse any of these violations of the Clean Water Act.

Accordingly, the plaintiffs' motions for partial summary judgment with respect to counts one and two of the complaint are hereby granted. The defendant is directed to undertake whatever action is necessary to achieve full compliance with its NPDES permit and Order No. 964 as expeditiously as possible. The parties shall submit to the court by no later than March 10, 1986, a proposed order to effectuate this ruling.

The court will defer consideration of what additional relief ought to be granted as a result of this ruling pending further discussions among the parties and the *amici curiae*.[10] The parties shall submit a status report by no later than June 2, 1986, informing the court of the progress of such discussions to date and offering their proposals for resolving all remaining issues in this lawsuit.

It is so ordered.

---

10. Any person who violates "any [NPDES] permit condition or limitation" may be subject under 33 U.S.C. § 1319(d) to "a civil penalty not to exceed $10,000 per day of such violation." The court finds it unnecessary at this stage of the proceedings to decide whether the commission of more than one violation of an NPDES permit on a single day could give rise to a penalty in excess of $10,000. *Compare Chesapeake Bay Foundation v. Gwaltney of Smithfield, supra,* 611 F.Supp. at 1554–1555 (holding that Section 1319(d) authorizes a maximum civil fine of $10,000 per day regardless of the number of permit violations) *with United States v. Amoco Oil Company, supra,* 580 F.Supp. at 1047 n. 1 (remarking that "a good argument can be made for the idea that violations of the daily limit for two or more *different effluents* should be subjected to separate penalties") (emphasis in original).