[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
This action arises out of an accident whereby the plaintiffs husband, Leonard Perugini, was fatally injured when a trench in which he was working collapsed and filled with water from a broken water main. By way of a second revised complaint dated January 21, 1998, the plaintiffs, Joan Perugini, as executor of the estate of Leonard Perugini and individually, brought an action for wrongful death and loss of consortium against the defendants, Metropolitan District Commission (MDC), Ravissa Brothers, Inc., and Southeast Paving, Inc.
Count one is brought against MDC and alleges negligence for the wrongful death of the plaintiffs decedent. Count two alleges CT Page 1916 that the decedent's injuries were caused by the reckless and/or intentional conduct of MDC. Counts three, four and five allege claims for strict liability, reckless and/or intentional conduct and loss of consortium, and are not subject to the present motion to strike.
MDC moves to strike paragraphs 6(a) and (b) of count one, count two in its entirety and the portion of the prayer for relief seeking punitive damages. MDC filed a memorandum of law in support of its motion to strike and the plaintiffs have filed a memorandum of law in opposition.
 DISCUSSION
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint . . . The court must construe the facts in the complaint most favorably to the plaintiff." (Citations omitted; internal quotation marks omitted.) Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 214-15, 618A.2d 25 (1992). "[F]or the purpose of a motion to strike, the moving party admits all facts well pleaded . . . (Citations omitted.) RKConstructors, Inc. v. Fusco Corp., 231 Conn. 381. 383 n. 2, 650A.2d 153 (1994). "If the facts provable in the complaint would support a cause of action, the motion to strike must be denied."Waters v. Autuori, 236 Conn. 820, 826, 676 A.2d 357 (1996).
 I.
MDC moves to strike paragraphs 6(a) and (b) of count one of the plaintiffs' second revised complaint. "[W]here individual paragraphs standing alone do not purport to state a cause of action, a motion to strike cannot be used to attack the legal sufficiency of those paragraphs . . . A single paragraph or paragraphs can only be attacked for insufficiency when a cause of action is therein attempted to be stated." (Citations omitted; internal quotation marks omitted.) Zavo v. Montanaro, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 313902 (January 25, 1995) (Cocco, J.); see also Johnston v. Townof Meriden, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 555732 (March 10, 1997) (Hennessey, J.) (19 CONN. L. RPTR. 149) (denying motion to strike individual paragraphs that did not state a cause of action). The CT Page 1917 proper procedural mechanism for the defendant to raise its objections to these paragraphs is a request to revise.
Because paragraphs 6(a) and (b) of count one, standing alone, do not purport to state a cause of action, the court denies MDC's motion to strike these paragraphs.
 II.
MDC moves to strike count two of the plaintiffs' complaint on the ground that it is immune from liability for the alleged reckless and intentional conduct of its agents or employees pursuant to General Statutes § 52-557n(a)(2)(A). The plaintiff's argue in opposition that MDC is not entitled to immunity because it is not a political subdivision as set forth in § 52-557n. The plaintiffs argue further that even if the court were to find that § 52-557n is applicable to this case, the court should nevertheless deny the motion to strike count two because § 52-557n(a)(2)(A) does not relieve MDC from liability for the reckless conduct of its agents and employees.
"Notwithstanding the procedural posture of a motion to strike. [our Supreme Court] has approved the practice of deciding the issue of governmental immunity as a matter of law." Gordon v.Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185
(1988). "[W]hen it is apparent from the face of the complaint that the municipality was engaging in a governmental function while performing the acts and omissions complained of by the plaintiff, the defendant [is] not required to plead governmental immunity as a special defense and [can] attack the legal sufficiency of the complaint through a motion to strike." Brownv. Branford, 12 Conn. App. 106, 111 n. 3, 529 A.2d 743 (1987). See also Heigl v. Board of Education, 218 Conn. 1, 8-9. 587 A.2d 423
(1991) (holding that trial court properly granted a motion to strike on the basis of governmental immunity).
The first issue for the court to address is whether MDC is a political subdivision subject to General Statutes § 52-557n.
Section 52-557n(a)(1) provides in relevant part that "[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting CT Page 1918 within the scope of his employment or official duties . . ." This statute does not define the term "political subdivision."
"[T]he process of statutory interpretation involves a reasoned search for the intention of the legislature." (Internal quotation marks omitted.) Willow Springs Condominium Assn., Inc.v. Seventh BRT Development Corp., 245 Conn. 1, 26 (1998). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.)Ensign-Bickford Realty Corp. v. Zoning Commission, 245 Conn. 257,266 (1998).
"[The] principal objective is to ascertain the apparent intent of the legislature. We first look for that intent in the apparent meaning of the statutory language. [W]here the wording is plain, courts will not speculate as to any supposed intention . . . If there is no ambiguity in the language of the statute, it does not become ambiguous merely because the parties contend for different meanings." (Citations omitted; internal quotation marks emitted.) Chrysler Corporation v. Maiocco, 209 Conn. 579,591-92, 552 A.2d 1207 (1989). "The words of a statute must be interpreted according to their ordinary meaning unless their context dictates otherwise." (Internal quotation marks omitted.) BridgeportFirefighters Assn. v. Bridgeport, 48 Conn. App. 667, 670 (1998). "In the interpretation of statutory provisions, the application of common sense to the language is not to be excluded." (Internal quotation marks omitted.) Blakeslee Arpaia Chapman, Inc. v. ElConstructors, Inc., 239 Conn. 708, 741, 687 A.2d 506 (1997).
"The word `state' means `a body of people occupying a definite territory and politically organized under one government . . . On this theory, the subdivision of a state would be a body of people less in number than the total number in the state, politically organized, and occupying a part of the territorial area of the state-hence a city, borough or town . . .' The term `political subdivision' is broad and comprehensive and denotes any division of the State made by the proper authorities thereof, acting within their constitutional powers, for the purpose of carrying out a portion of those functions of the State which by long usage and the inherent necessities of government have always been regarded as public." CT Page 1919 (Citations omitted; internal quotation marks omitted.) State exrel. Maisano v. Mitchell, 155 Conn. 256, 263, 231 A.2d 539
(1967). In Maisano, the court held that the second taxing district of Norwalk, although a part of the city of Norwalk, constituted a political subdivision of the state.
"The attributes which are generally regarded as distinctive of a political subdivision are that it exists for the purpose of discharging some function of local government, that it has a prescribed area, and that it possesses authority for subordinate self-government through officers selected by it." Dugas v.Beauregard, 155 Conn. 573, 578, 236 A.2d 87 (1967). In Dugas, the court held that the town and city consolidation districts possessed none of the essential attributes of a political subdivision because "they have no legislative or governing bodies, no power to levy taxes, no power to make appropriations, and no provision for self-government." Id.
The term "political subdivision" has also been defined by statutes. For example, General Statutes § 7-560 (13) states that a" `municipality' means any town, city, borough, consolidated town and city, consolidated city and borough, anymetropolitan district, any district . . . and any other politicalsubdivision of the state having the power to levy taxes and to issue bonds, notes or other obligations." (Emphasis added.) See also General Statutes § 28-1(j) ("political subdivision" means any city, town, municipality. borough or other unit of local government); § 7-195(a) ("unit of local government" means a town or political subdivision thereof and "political subdivision" means a city, borough or district within a town); § 7-462(b) ("political subdivision" includes any town, city, borough, district . . . or other public authority or public agency established by law).
The defendant, Metropolitan District Commission, "is a municipal corporation created in 1929 by a special act of the General Assembly. 20 Special Acts 1204, No. 511. It was given broad powers relating to sewage disposal, water supply and regional planning as well as powers limited to certain highways."Rocky Hill Convalescent Hospital, Inc. v. Metropolitan District.160 Conn. 446, 450, 280 A.2d 344 (1971).[1] The powers and duties conferred on the corporation include the layout, construction, maintenance and repair of public highways, streets, walks, bridges. sewers and sanitary and water systems. The affairs of the district are managed by a district board, composed CT Page 1920 of fifteen electors of the district. The district is authorized to pay taxes upon the towns composing the district, to issue negotiable bonds, notes and other certificates of debt and to take property by eminent domain.
Based on the foregoing, the court finds that the MDC is a political subdivision for the purposes of General Statutes §52-557n. Accordingly, MDC is entitled to immunity for its actions in the performance of a governmental function "unless the legislature has enacted a statute abrogating that immunity." SeeWilliams v. New Haven, 243 Conn. 763, 766 (1998).
General Statutes 52-557n sets forth general principles of municipal liability and immunity and abrogates much of the common law rule of governmental immunity. It provides that a political subdivision of the state shall be liable for the negligent acts or omissions of the political subdivision or its employees. The statute, however. sets forth a number of exceptions to this liability. Specifically. § 52-557n(a)(2) provides in pertinent part: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct. fraud, actual malice or wilful misconduct . . ."
The next issue for the court, then, is whether the allegations of count two fall under this exception to the rule of liability for the negligent acts or omissions of a political subdivision or its employees. MDC moves to strike count two on the ground that pursuant to § 52-557n(a)(1)(A), it is immune from liability for the alleged reckless and/or intentional conduct of its agents or employees. The plaintiffs argue that the reckless conduct alleged in count two does not amount to wilful conduct as required by the statute and, therefore, MDC is not immune from liability.
Count two incorporates the allegations of count one and further alleges that "[t]he plaintiff's decedent's injuries and death were caused by the reckless and/or intentional conduct of the defendant, Metropolitan District Commission. through its agents and/or employees, in that defendant, through its own inspection and reporting procedure and through its administration of its contract with Southeast Paving Co., lnc., had specific knowledge and warning of a chronic pattern of unreasonably dangerous conduct by its contractor, CT Page 1921 pertaining, inter alia, to trench safety, and the integrity of the water main, and patent violations of O.S.H.A. safety rules, and subjecting individuals whose duties included entering trenches to needless peril of life and limb, yet recklessly and/or intentionally failed to exercise its authority to ensure proper procedures were followed or [to] shut down the job."
Recklessness has been defined as "a state of consciousness with reference to the consequences of one's acts" and "wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse." Dubay v.Irish, 207 Conn. 518, 532-33, 542 A.2d 711 (1988). "While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing." Id., 533. "Alleging that one acted `recklessly' means that the conduct was wilful." Bowrys v.Santanella, 39 Conn. Sup. 102. 104, 470 A.2d 1245 (1983).
Accordingly, the court finds that contrary to the plaintiffs' argument, the allegations in count two that the defendant recklessly and/or intentionally subjected individuals to needless peril of life or limb amount to allegations of wilful conduct within the meaning of the statute. Pursuant to General Statutes § 52-557n(a)(1)(A) therefore, MDC is immune from liability and the motion to strike count two is granted.[2]
 III.
MDC also moves to strike the portion of the prayer for relief seeking punitive damages. The claim for punitive damages in the prayer for relief is not directed at any particular count of the complaint. Because the claim for punitive damages is applicable to other counts of the complaint that are not the subject of this motion to strike, the motion to strike the portion of the prayer for relief seeking punitive damages is denied.
 CONCLUSION
For the foregoing reasons, the court denies the motion to strike paragraphs 6(a) and (b) of count one, the court grants the motion to strike count two, and the court denies the motion to strike the portion of the prayer for relief seeking punitive damages.
STENGEL, J. CT Page 1922